1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELI LILLY AND COMPANY and ICOS
CORPORATION,

Plaintiffs,

v.

TEVA PHARMACEUTICALS USA INC.
and WATSON LABORATORIES, INC.,

Defendants,

and JOHN STEVEN WHITAKER,

Third-Party
Subpoena
Recipient.

No.  2:17-mc-00012 RSL

Related to Civil Action No.
1:16-cv-01119-AJT-MSN
(CONSOLIDATED)

Pending in the U.S. District Court for
the Eastern District of Virginia

**PLAINTIFFS' JOINT MOTION TO
TRANSFER AND IN THE
ALTERNATIVE TO QUASH OR
MODIFY DEFENDANTS'
SUBPOENAS TO NONPARTY AND
FOR A PROTECTIVE ORDER**

NOTE ON MOTION CALENDAR:
**February 10, 2017**

## I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 45, Plaintiffs, Eli Lilly and

Company and ICOS Corporation (collectively, "Lilly" or "Plaintiffs"), move (1) to transfer

Lilly's motion to quash and for a protective order to the Eastern District of Virginia or, *in

the alternative*, (2) to quash or modify Defendants Teva Pharmaceuticals USA Inc.'s and

Watson Laboratories, Inc.'s ("Defendants") document and deposition subpoenas to Lilly's

former employee, Dr. John Steven Whitaker, J.D., M.D., and for a protective order.

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 1

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    Specifically, if the motion is not transferred, Lilly seeks to (a) prescreen Dr. Whitaker's

2    subpoenaed document production to prevent him from producing Lilly's privileged

3    materials and (b) prevent Dr. Whitaker from voluntarily providing Lilly's privileged and

4    confidential materials to Defendants outside the bounds of a protective order.

5          While motions to quash and for a protective order often come from the subpoenaed

6    party, this is not a typical situation.  Dr. Whitaker refuses to cooperate with Lilly and, worse

7    yet, has stated he *intends* to harm Lilly absent Lilly making a payment of $50 million to

8    him personally.  Without the Court's intervention, Lilly faces irreparable harm.

9          Accordingly, Lilly requests that this Court (1) transfer its motion to the court in the

10   underlying Eastern District of Virginia case or (2) quash/modify the Defendants' subpoenas

11   and grant a protective order.

12                        **II.     BACKGROUND**

13         The underlying litigation in the Eastern District of Virginia involves eleven actions

14   in which Lilly asserts a patent covering technology regarding its blockbuster drug Cialis®,

15   which generated over $1.2 billion in revenue in the U.S. alone in 2015 (Ex. C. at 20),

16   against generic pharmaceutical companies seeking to copy Lilly's inventions.[1]  (Stewart

17   Decl. at ¶ 3.)  The patent-in-suit—U.S. Patent No. 6,943,166 ("'166 patent")—is entitled

18   "Compositions Comprising Phosphodiesterase Inhibitors for the Treatment of Sexual

19   Dysfunction" and contains claims directed to a method of treating sexual dysfunction, such

20   as male erectile dysfunction.  (*See* Civil Action No. 1:16-cv-01119-AJT-MSN, Dkt. No. 1-

21   1, '166 Patent at Claims 1–2.)

22         Dr. Whitaker, to whom Defendants' subpoenas are directed, is a named co-inventor

23   of the '166 patent.  (*See* Dkt. No. 1-1, '166 Patent at Cover Page; Stewart Decl. at ¶ 4.)

24   From 1994 to 2007, Dr. Whitaker was employed at ICOS Corporation, which was acquired

25

26         [1] The actions have all been consolidated before Judge Trenga in Civil Action No. 1:16-cv-01119-AJT-MSN.

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 2

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

by Eli Lilly in 2007.  (*See investor.omeros.com/phoenix.zhtml?c=219263&p=irol-govBio&ID=203453* "Omeros Biography" (last visited Feb. 2, 2017); Stewart Decl. at ¶ 2.) At ICOS, he held roles including Division Vice President and medical director of the Cialis® global product team.  (*See* Omeros Biography.)

Now a former employee of Lilly's, Dr. Whitaker was engaged by Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Lilly's litigation counsel) to consult in relation to the underlying litigation at his customary rate of $500 per hour.  (Stewart Decl. at ¶ 5.)  On January 11, 2017, Dr. Whitaker indicated that he thought he would "increase [his] hourly rate," and in this context inquired about "the highest partner hourly rate at Finnegan."  (Stewart Decl. at ¶ 6.)  He terminated his consultancy agreement the next day, after Lilly did not offer him a higher fee.  (*See* Stewart Decl. at ¶¶ 6–7.)

A few weeks later Dr. Whitaker contacted Lilly offering to meet.  (*See* Stewart Decl. at ¶ 8.)  With counsel from Finnegan also present, on January 29, 2017, Lilly met with Dr. Whitaker.  (Stewart Decl. at ¶ 8.)  At the meeting, Dr. Whitaker indicated that (1) he was dissatisfied with the $1.25 million he had received when Lilly purchased ICOS; (2) unless Lilly paid him $50 million, he would provide testimony in response to Defendants' subpoena in a manner that would be harmful to Lilly; and (3) he had Lilly documents in his possession that he would provide in response to the Defendants' subpoena.  (Stewart Decl. at ¶ 9.)

Given Dr. Whitaker's representations, Lilly cannot rely on him to comply with his fiduciary obligations to Lilly or preserve Lilly's trade secrets and confidential information by producing his discovery under the protections of the protective order entered in the underlying litigation.  Nor can Lilly trust that he will protect Lilly's privileged information—privileges that are not his to waive.  Specifically, Lilly cannot trust that Dr. Whitaker will withhold Lilly's privileged information from discovery, create a privilege log instead of producing privileged documents, or refuse to disclose Lilly's privileged

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 3

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

information during deposition.  He may even voluntarily disclose such information further to his stated intent to harm Lilly absent payment of $50 million.  Accordingly, before it is too late, Lilly must intervene to protect its confidential, privileged information.

To be clear, Lilly does not seek to delay or obstruct discovery in the underlying litigation.  Lilly is not asserting a blanket privilege claim regarding the subpoenaed information, and it does not dispute that Dr. Whitaker likely has potentially relevant information that should be produced.  Lilly simply desires to have the subpoenaed documents produced under a protective order and to have its privileged materials kept in confidence.  Discovery from Dr. Whitaker must be supervised.

### III.    LEGAL STANDARDS

The Federal Rules provide that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).  To determine whether exceptional circumstances exist, a court may consider many factors, including "[case] complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation."  *Ford Glob. Techs., LLC v. New World Int'l, Inc.*, No. C15-1329JLR, 2015 WL 6507151, at *2 (W.D. Wash. Oct. 27, 2015); *see also* Fed. R. Civ. P. 45(f) advisory comm. n. (2013).

"The scope of discovery under Rule 45 is the same as that permitted under Rule 26." *Petka v. Mylan Pharm., Inc.*, No. 16-MC-80196-MEJ, 2016 WL 6947589, at *2 (N.D. Cal. Nov. 28, 2016); *see also Simplex Mfg. Co. v. Chien*, No. C12-835RAJ, 2012 WL 3779629, at *1 (W.D. Wash. Aug. 31, 2012) (explaining that the discovery limitations of Rule 26 "apply with equal force to subpoenas to third parties"); *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017 (Fed. Cir. 1986) (explaining that "rule 45(b)(1) must be read in light of Rule 26(b)"); *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 4

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   Cir. 1994) (applying both Rule 26's and Rule 45's standards in ruling on motion to quash

2   subpoena).  Under Federal Rule of Civil Procedure 26, a party is only entitled to

3   *nonprivileged* information that is relevant to a claim or defense, so long as it is proportional

4   to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

5        While Rule 45 permits parties to subpoena nonparties to obtain discovery, *see* Fed.

6   R. Civ. P. 45(c), a court *must* quash or modify a subpoena that "requires disclosure of

7   privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P.

8   45(d)(3)(A)(iii).  The court also may, on motion, quash or modify the subpoena if it

9   requires "disclosing a trade secret or other confidential research, development, or

10  commercial information." *Id.* at 45(d)(3)(B)(i); *see also Emara v. Multicare Health Sys.*,

11  No. 3:11-CV-6055-RBL, 2012 WL 5205950, at *3 (W.D. Wash. Oct. 22, 2012) ("District

12  courts enjoy broad discretion . . .  to limit discovery to prevent its abuse.") (citing *Hallett v.*

13  *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  A party that is not the recipient of the

14  subpoena has standing to challenge the subpoena when its challenge asserts that the

15  information is privileged or protected to itself.  *Erickson v. Microaire Surgical Instruments*

16  *LLC*, No. C08-5745BHS, 2010 WL 1881946, at *2 (W.D. Wash. May 6, 2010); *Johnson v.*

17  *U.S. Bancorp*, No. C11-02010 RAJ, 2012 WL 6726523, at *2 (W.D. Wash. Dec. 27, 2012).

18        Motions for protective orders are governed by Rule 26(c).[2]  "After a showing of

19  good cause, the district court may issue any protective order . . . including any order

20  prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing

21  the terms of disclosure." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004)

22  (citing Fed. R. Civ. P. 26(c)).  "For good cause to exist, the party seeking protection bears

23  the burden of showing specific prejudice or harm will result if no protective order is

24  granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11

25

26        [2] "A motion to quash is similar to a motion for a protective order that discovery not be had under Rule 26(c), and is judged under similar standards." *Leibholz v. Hariri*, No. CIV.A. 05-5148 (DRD), 2008 WL 2697336, at *2 (D.N.J. June 30, 2008) (citing 9 James W. Moore et al., Moore's Federal Practice § 45.50[2] (3d ed. 2008)).

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 5

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

(9th Cir. 2002) (citations omitted); *Daimler Truck N. Am. LLC v. Younessi*, No. 08-MC-5011RBL, 2008 WL 2519845, at *3 (W.D. Wash. June 20, 2008) ("In situations involving information which is appropriately kept private, the Court may fashion restrictions on the form and method of disclosure.")

## IV.    ARGUMENT

### A.    Exceptional Circumstances Necessitate Transferring Plaintiffs' Motion to the Eastern District of Virginia

Since adding Rule 45(f) in the 2013 amendments to the Federal Rules, this court has ruled on the issue of exceptional circumstances only once.  *See Ford Glob. Techs.,* 2015 WL 6507151.  The court found that exceptional circumstances did not exist where three defendants moved to transfer a non-party subpoena seeking limited, non-privileged sales data as part of jurisdictional discovery.  *Id.* at *2.  The facts here are dramatically different, and likewise compel a different result.

Twelve parties are currently entangled in the underlying litigation, which is governed by a discovery plan and protective order that was litigated before and ruled on by the Eastern District of Virginia.  In further contrast to *Ford Global*, where the subpoena involved jurisdictional discovery and no case management order was in place, *id.*, discovery in the underlying litigation has been ongoing for several months, Defendants' subpoena involves substantive discovery, and—without transfer—there is substantial risk of disrupting the management of the case.  Notably, discovery is scheduled to end on April 14, 2017, and trial will be within 4–8 weeks of the final pretrial conference scheduled for April 20, 2017.  (Civil Action No. 1:16-cv-01119-AJT-MSN, Dkt. No. 20.)

Because the circumstances are so different from those in *Ford Global*, this court should follow others that have transferred subpoena-related motions because the subpoena could interfere with the primary court's ongoing proceedings.  *See, e.g.*, *Green Pet Shop Enterprises, LLC v. Maze Innovations, Inc.*, No. 1:15-CV-1138, 2016 WL 5936892, at *2

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 6

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

(W.D. Pa. Oct. 12, 2016).  Given the potential for discovery disputes stemming from Dr. Whitaker's documents and testimony sought by Defendants' subpoenas, the risk of disrupting management of the underlying litigation is amplified.  Local resolution of subpoena-related motions could cause duplicative or contrary decisions.  Due to the complexity of the underlying litigation, particularly with respect to discovery disputes, confidentiality issues, and multifaceted case management, extraordinary circumstances exist and this Court should transfer Lilly's Motion to the Eastern District of Virginia.

Additionally, while the protective order in the underlying litigation covers the inadvertent disclosure of privileged information, it does not cover situations where a nonparty, like Dr. Whitaker, inadvertently or intentionally discloses a parties' privileged information.  (*See* Ex. D.)  Transfer will allow the Eastern District of Virginia to concurrently resolve this Motion while considering whether modifications to the governing protective order should be made.

**B.  Defendants' Subpoenas Seek Lilly's Privileged And Confidential Materials, Requiring That They Be Quashed or Modified**

Defendants' document subpoena includes nineteen requests, many of which facially call for Lilly's privileged and confidential materials.[3]  For example, Defendants requested:

> **REQUEST NO. 1:**  Each document and thing relating to the preparation or prosecution of the applications resulting in the ['166 patent] and any Related Applications, including but not limited to testing, analyses, or other experimentation made for the purpose of aiding the prosecution of the application that led to the ['166 patent], whether or not presented to the PTO.

> **REQUEST NO. 2:**  Each document and thing relating to the conception or initial disclosure or actual or constructive reduction to practice of each alleged invention described or claimed in the ['166 patent], including without limitation, lab notebooks, research data, memoranda, meeting minutes, analytical data, reports and invention disclosures.

---

[3] While numerous other requests also potentially implicate privileged and confidential materials, Lilly acknowledges that some appear not to.  For example, Request No. 4 seeks Mr. Whitaker's "current and complete CV."  (Ex. A at 7.)

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 7

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

(Ex. A at 7.)  These requests clearly implicate both confidential business information (e.g., internal meeting minutes and analytical reports) and privileged patent-prosecution documents, such as "invention disclosures."[4]  *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (holding that "an invention record constitutes a privileged communication, as long as it is provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding") (internal citation and quotation marks omitted); *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1295, 1301 (Fed. Cir. 2016) ("recognizing an independent patent-agent privilege," which covers communications relating to "to preparing and prosecuting any patent application [and] consulting with or giving advice to a client in contemplation of filing a patent application or other document with the [Patent and Trademark] Office").[5]  *Spalding* extends privilege beyond invention disclosures and covers "technical information" and even "prior art" in the invention record—information called for by Defendants' requests.  203 F.3d at 806.  Given that Dr. Whitaker is an inventor of the '166 patent—and his representations that he *has* Lilly documents and *will* turn them over to Defendants (*see* Stewart Decl. at ¶ 9)—if he is permitted to produce responsive documents, Lilly's confidential information might be disclosed *with no protections* and its privileged communications might be revealed.

---

[4] "Invention records," as described by the Federal Circuit, are documents "generally used by corporations as a means for inventor to disclose to the corporation's patent attorney that an invention has been made and to initiate patent action."  *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 802 n.2 (Fed. Cir. 2000).

[5] "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law."  *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001).

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 8

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

While Defendants' deposition subpoena does not provide question topics, (*see* Ex. B), it is reasonable to assume that, consistent with their document requests, Defendants will likely ask questions that implicate privileged communications relating to, *inter alia*, the preparation and prosecution of the application that led to the '166 patent.  But the privilege here is *not* Dr. Whitaker's to waive; it belongs to Lilly.  *See In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981) ("[T]he attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves."); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.").

Under these circumstances, to protect the potential disclosure of Lilly's confidential and privileged materials, Rules 26 and 45 dictate that Defendants' subpoenas be quashed/modified and a protective order be entered to address Lilly's concerns.

**C.    Courts Have Quashed/Modified Subpoenas And Granted Protective Orders Under Similar Circumstances**

Numerous other courts have quashed/modified subpoenas under similar facts.  For example, in *CAO Grp. v. Sybron Dental Specialties*, defendants served subpoenas on plaintiff's former patent counsel, seeking documents and deposition testimony about the relevant patents in the underlying action, including information on the preparation and prosecution of the relevant patent applications (like Request Nos. 1–2 here) and information related to the relevant patents' validity and/or enforceability (like Request No. 9 here).  *See* No. 2:12-CV-01062-DN, 2014 WL 1338580, at *1 (D. Utah Apr. 3, 2014).  Plaintiff's relationship with former counsel—similar to Lilly's relationship with Dr. Whitaker—had "broke[n] down" and former counsel "refused to assert privilege on plaintiff's behalf

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 9

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   regarding the subpoenas." *Id.* at *1, 3. Accordingly, plaintiff moved to modify the

2   subpoenas so it could prescreen the subpoenaed documents "to create a privilege log and to

3   withhold any privileged information." *Id.* at *2, 4. The court granted the motion, ordering

4   the subpoenaed party to permit plaintiff to prescreen the subpoenaed documents and staying

5   the deadlines for production and depositions. *Id.* at *4.

6          Decisions from other courts are in accord with *CAO Grp. See e.g.*, *Games2U, Inc.*

7   *v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at *1–2,

8   6–9 (D. Ariz. Aug. 9, 2013) (quashing deposition subpoena served on party's patent-

9   prosecution counsel because the "deposition would repeatedly implicate attorney-client

10  privilege" and permitting subpoenaed nonparty to "provide a privilege log employing a

11  categorical approach" for her patent file because such documents are privileged); *Petka v.*

12  *Mylan Pharm., Inc*., No. 16-MC-80196-MEJ, 2016 WL 6947589, at *4 (N.D. Cal. Nov. 28,

13  2016) (quashing deposition subpoena served on party's former patent counsel because it

14  was "likely that much of the information Mylan [sought] . . . is at least partially protected

15  by attorney-client privilege and work-product protection"). Notwithstanding that the

16  subpoenas in *CAO Grp.*, *Games2U*, and *Petka* sought information from counsel involved in

17  patent matters instead of an inventor, the same information and concerns are at stake here—

18  Dr. Whitaker was simply on the other end of the privileged communications.

19         This District also has modified subpoenas and granted protective orders under

20  similar circumstances. In *Daimler Truck*, plaintiff subpoenaed a nonparty, seeking to copy

21  information from its computers. 2008 WL 2519845, at *3 (W.D. Wash. June 20, 2008).

22  Recognizing that copying the hard drives "might reveal not just privileged, but also trade

23  secret information," the court both quashed the subpoena where it required production for

24  copying and fashioned an order allowing the objecting party "to perform the search itself to

25  determine what documents can be produced without violating [trade secret and privilege]

26  concerns." *Id.* at *3, 5. And in *Cabell v. Zorro Prods., Inc.*, plaintiff subpoenaed

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 10

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

nonparties for information relating to defendants' intellectual-property agreements.[6]  *See* 294 F.R.D. 604, 606 (W.D. Wash. 2013).  The court granted defendants' request for a two-tiered protective order covering the nonparties' document productions under the subpoena to shield defendants "from the specific harm of providing propriety information to a competitor."  *Id.* at 610.

　　In view of the above cases, Defendants' subpoenas should be quashed/modified to prevent Dr. Whitaker from inadvertently or voluntarily disclosing Lilly's protected information.  Like in *CAO Grp.* and *Daimler Truck*, Lilly should be permitted to review its own documents to ascertain what should be produced.[7]   Indeed, because Dr. Whitaker—absent payment of $50 million—may intentionally disclose Lilly's protected information, he cannot be trusted to guard Lilly's interests.  *Cf. Ford Glob. Techs., LLC v. New World Int'l, Inc.*, No. C15-1329JLR, 2015 WL 6507151, at *1, 3–4 (W.D. Wash. Oct. 27, 2015) (denying motion to quash or modify subpoena where subpoenaed nonparty *agreed* to designate all materials in the proposed production under the protective order in the underlying patent litigation, but nevertheless ordering the nonparty to do the same).

　　However, under any circumstance, Dr. Whitaker should be ordered to obey Lilly's instructions on privilege at his deposition.  *See Valassis v. Samelson*, 143 F.R.D. 118, 124–25, 125 n.10 (E.D. Mich. 1992) (recognizing the need to protect an employer's privileged information from disclosure when a former employee with such information is deposed by an adverse party); *Rutherford v. PaloVerde Health Care Dist.*, No. EDCV131247JAKSPX, 2014 WL 12637191, at *2 (C.D. Cal. Oct. 28, 2014) (explaining that defendants' counsel may object to deposition questions seeking privileged information from defendants' former outside counsel and former board members and noting that, if the witness "ignores defense

---

[6] While Lilly's prosecution-related information is privileged and confidential, Lilly's intellectual-property agreements also are implicated by Defendants' requests.  (*See* Ex. A at 8 (Request No. 10).)

[7] Under this scenario, Lilly would create a privilege log and would produce the subpoenaed documents with Bates numbers under the protective order in place in the underlying litigation.

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN THE ALTERNATIVE TO QUASH OR MODIFY DEFS' SUBPOENAS TO NONPARTY AND FOR A PROTECTIVE ORDER – Page 11

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  counsel's instructions not to answer questions on grounds of privilege . . . the parties may

2  halt the depositions and call the magistrate judge for further guidance").

3  **V.   CONCLUSION**

4    For the reasons set forth above, Plaintiffs respectfully request that this Court (1)

5  transfer Lilly's motion to quash and for a protective order to the Eastern District of Virginia

6  or, *in the alternative*, (2) quash/modify Defendants' subpoenas by (a) ordering Dr. Whitaker

7  to allow Lilly to prescreen his document production, (b) ordering Dr. Whitaker to not

8  voluntarily provide Lilly's privileged materials to Defendants, and (c) ordering Dr.

9  Whitaker to obey Lilly's instructions on issues of privilege at his deposition.

10

11  DATED: February 2, 2017   **YARMUTH WILSDON PLLC**

12          By: */s/ John H. Jamnback*

13           John H. Jamnback, WSBA No. 29872
        1420 Fifth Avenue, Suite 1400

14          Seattle, Washington 98101
        206.516.3800

15          206.516.3888 (facsimile)
        jjamnback@yarmuth.com

16

17          **FINNEGAN, HENDERSON, FARABOW,
        GARRETT & DUNNER, LLP**

18

19          Mark J. Feldstein
        John M. Williamson

20          901 New York Avenue, NW
        Washington, D.C. 20001-4413

21          202.408.4000
        202.408.4400 (facsimile)

22          john.williamson@finnegan.com
        mark.feldstein@finnegan.com

23

24          *Attorneys for Plaintiffs Eli Lilly and Company
        and ICOS Corporation*

25

26

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 12

**YARMUTH WILSDON** PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing motion and supporting documents were served as

3    follows:

4    1.       Third party subpoena recipient John Steven Whitaker, M.D.

5
     By email to Dr. Whitaker at his last known email address, jsw195690@gmail.com on
6    February 2, 2017 after business hours, and by 1ˢᵗ Class Mail on February 3, 2017, to the
     following address:
7
     John Steven Whitaker, MD
8    1510 40th Avenue
     Seattle, WA 98122
9
     Personal service will also be attempted at this address on February 3, 2017.
10

11   2.       Defendants Teva Pharmaceuticals USA Inc. and Watson Laboratories, Inc.

12   By email February 2, 2017 after business hours, and by 1ˢᵗ Class Mail on February 3, 2017,
     to counsel of record in the issuing court:
13
      Ryan Armon Cook
14    AXINN, VELTROP &
      HARKRIDER LLP
15    90 State House Square
      Hartford, CT 06103
16    rcook@axinn.com
      jharris@axinn.com
17

18          I declare under penalty of perjury under the laws of the State of Washington that the

19   foregoing is true and correct.

20          DATED:  February 2, 2017 at Seattle, Washington.

21                                          */s/ John H. Jamnback*
                                            John H. Jamnback
22

23

24

25

26

PLAINTIFFS' JOINT MOTION TO TRANSFER AND IN
THE ALTERNATIVE TO QUASH OR MODIFY DEFS'
SUBPOENAS TO NONPARTY AND FOR A
PROTECTIVE ORDER – Page 13

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

981.01 rb020601 2/2/17